IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00335-WDM-PAC

GENESIS INSURANCE COMPANY, a Connecticut corporation

      Plaintiff and Counter-Defendant,

v.

DANIEL D. CROWLEY

      Defendant,

ARLIN M. ADAMS, Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corporation and Coram, Inc.

      Defendant and Counter-Claimant.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

Miller, J.

      This matter is before the court on the Motion for Summary Judgment Based on the Expiration of the Relevant Policy Period and Discovery Period (doc no 151) filed by Plaintiff Genesis Insurance Company ("Genesis"), Motion for Partial Summary Judgment (doc no 148), filed by Defendant Daniel D. Crowley ("Crowley"), Motion for Partial Summary Judgment regarding Insurance Coverage of Outside Directors Under the Genesis Policy (doc no 153) filed by Arlin M. Adams, Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corporation and Coram, Inc. ("Trustee"), and Motion for Partial Summary Judgment as to Coverage for the Settlement in the Underlying Action (doc no 131) filed by Genesis. After review of the parties' written arguments and tendered

evidence, I conclude oral argument is not required.  For the reasons that follow, summary judgment will enter against Genesis and in favor of Crowley and Trustee in part; specifically, I conclude that insurance coverage for the underlying litigation is not precluded by the expiration of the policy, but that coverage extends only to claims and losses arising out of conduct of the defendants occurring before January 27, 2001.  The motions are further granted in part and denied in part as described below.

## Factual Background

This case has its origins in the bankruptcy proceedings of two entities, Coram Healthcare Corporation and its wholly owned subsidiary, Coram, Inc. (collectively "Coram"), in the United States Bankruptcy Court for the District of Delaware.  Crowley is the former CEO and Chairman of Coram.  Defendant Arlin M. Adams is the Trustee of the bankruptcy estates of Coram.  On December 29, 2004, Trustee filed an action against Crowley and several other defendants, all outside directors of Coram (the "Outside Directors"), in the United States District Court for the District of Delaware, alleging that the defendants had breached their fiduciary duties to Coram (the "Underlying Lawsuit"). Crowley and the Outside Directors sought coverage for the defense of the Underlying Lawsuit on a Directors' and Officers' Liability Policy purchased by Coram from Genesis. Genesis then filed this action against Crowley and the Outside Directors seeking a declaration that the policy does not provide coverage for the claims asserted by Trustee in the Underlying Lawsuit.  The Outside Directors asserted a counterclaim against Genesis for breach of contract (for failing to provide coverage in the Underlying Lawsuit). Thereafter, the Outside Directors settled with Trustee in the Underlying Lawsuit and Trustee was substituted for the Outside Directors in this action.

The primary issue in the motions for summary judgment filed by the parties is whether coverage for the claim asserted in the Underlying Lawsuit, or part of it, is precluded because the lawsuit was filed after the expiration of the policy period, as extended by a one-year "discovery period."   If not, the parties then seek summary judgment on whether coverage is barred by other exclusions in the policy.   Finally, Genesis seeks a determination on whether the settlement by the Outside Directors is a "Loss" under the policy, assuming that the Underlying Lawsuit is otherwise covered.

To resolve these questions, I consider the following undisputed facts:

Genesis issued a Directors' and Officers' Liability insurance policy to Coram, which had as a policy period January 8, 1999 to January 8, 2001, with an option to purchase additional coverage for a "discovery period" of one year.   Coram purchased the extended coverage before the policy expired, extending the policy period to January 27, 2002 but "solely for Claims first made during the Discovery Period which are based upon or arise out of Wrongful Acts occurring or allegedly occurring before January 27, 2001 and otherwise covered by the Policy."   The policy is a "claims-made" policy, under which Genesis promises to pay "Loss arising from Claims first made during the Policy (or Discovery) Period."

Coram filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware on August 8, 2000.   Under the proposed plan of reorganization (the "First Plan"), Coram's lenders (the "Noteholders") would receive all of the equity in Coram and convert Coram from a public to a private company.   An Official Committee of Equity Security Holders (the "Equity Committee") opposed the First Plan, as it provided nothing for Coram's shareholders.   On December 21, 2000, the Bankruptcy Court refused to

confirm the First Plan.  One reason for this was the discovery by the Equity Committee that

Crowley had a separate employment agreement with Cerberus Partners, LLP ("Cerberus"),

one of Coram's largest creditors, under which he received approximately $80,000 a month

and was required to obey the instructions of Cerberus.  The Bankruptcy Court found this

to be an actual conflict of interest.

Shortly after the rejection of the First Plan, Coram's counsel sent a letter to Genesis

regarding possible claims (the "Notice Letter").  The letter, dated January 24, 2001,

purported to give notice pursuant to the policy of circumstances that could give rise to a

claim, including the following:

> [T]he Equity Committee in the Chapter 11 alleged that the
> Debtors failed to disclose fully to the creditors in the
> Disclosure Statement all of [the] financial relationships that
> existed between Mr. Crowley and Cerberus Partners.   In
> addition, certain portions of the transcript from the December
> 21, 2000 hearing in the Bankruptcy Court raise the implication
> that the officers and directors of the Debtors may have been
> negligent in failing to obtain such information from Mr. Crowley
> upon his employment with the organization and later in
> connection with their consideration of filing of the bankruptcy
> petitions. With this information, a stockholder or creditor of the
> Debtors may attempt to assert some sort of securities fraud,
> breach of fiduciary duty, negligence or other claim directly or
> derivatively against the Insureds for the failure to disclose this
> relationship, inquire about it, limit it or otherwise take notice of
> these facts in the operation of the organization or the filing of
> the bankruptcy petition and the formulation and negotiation of
> the plan of reorganization that was proposed in the bankruptcy
> proceedings.

After the rejection of the First Plan, Coram's Board of Directors formed a special

committee consisting of the four Outside Directors.  Harrison J. Goldin Associates, LLC

("Goldin") was hired to advise the Outside Directors concerning, *inter alia*, Crowley's

conflict of interest.   In September 2001, Goldin issued a report containing

recommendations for a second plan of reorganization (the "Second Plan").  On December 21, 2001, the Bankruptcy Court rejected the Second Plan, noting that "Nothing, in fact, has changed since the first confirmation hearing.  Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while serving as the Debtor's CEO and President."  The Court further found that the Outside Directors, other than to hire Goldin and review the report, "took no other action in response to denial of confirmation of the First Plan.  Significantly, [they] did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus and did not even ask Crowley if the conflict persisted."  On March 7, 2002 the Bankruptcy Court approved the appointment of Trustee.

The Equity Committee and Trustee filed competing plans of reorganization; however, both provided for the prosecution of a breach of fiduciary duty action against Crowley and the Outside Directors.  The Trustee's plan was adopted and became effective on December 1, 2004.  Trustee filed the complaint in the Underlying Lawsuit in the Delaware District Court on December 29, 2004, asserting claims based on Crowley's initial failure to disclose his employment agreement, the failure of the Outside Directors to inquire about it, as well as the failure to act after the rejection of the First Plan.

Trustee's complaint, however, was not the first litigation or effort at litigation resulting from Crowley's employment agreement with Cerberus and the alleged failure of the Outside Directors to discover and address it.  In November 2000, two shareholders filed a class action complaint against Crowley and the Outside Directors (the "Shareholder Litigation"), alleging securities fraud and breach of fiduciary duty.  Genesis was notified of the litigation and advanced defense costs.  On March 21, 2001, a Second Amended

Complaint was filed in the Shareholder Litigation, which included specific claims based on Crowley's financial relationship with Cerberus.

In addition, on February 20, 2001, Coram notified Genesis that the Equity Committee had filed a motion in the Bankruptcy Court for leave to file a derivative complaint against Crowley (the Court stayed the litigation and denied the motion without prejudice). Genesis agreed to pay the Outside Directors' defense costs in contesting the filing of the derivative suit, with a reservation of rights. On January 8, 2002, Coram again notified Genesis that the Equity Committee had filed a renewed motion for leave to file derivative claims against the Outside Directors and Crowley.

Discussion

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The parties apparently agree that Colorado law should apply to the interpretation of the policy.

1.   Adequacy of Notice

It is undisputed that the Underlying Lawsuit was filed several years after the policy period expired. Although the policy by its terms is limited to "Claims first made during the Policy (or Discovery) Period," Crowley and Trustee assert that the Underlying Lawsuit is covered pursuant to a provision that permits coverage for claims asserted after the expiration of the policy if adequate notice is given. Section VII(B) of the policy provides:

6

> If, prior to the effective date of the expiration of the Policy Period, the Directors, Officers or the Company first become aware of circumstances which may subsequently give rise to a Claim and the Directors, Officers or Company as soon as practicable during the Policy Period give written notice to the Insurer of the circumstances and the reasons for anticipating a Claim, then any claim subsequently made based upon such circumstances (of which the Insurer receives proper notice . . . ) shall be deemed for the purposes of the Policy to have been first made during the Policy Period; provided, however, as a condition precedent for any coverage to arise hereunder, such notice must be specific and contained full particulars as to the facts and circumstances potentially giving rise to the Claim, including a narrative setting forth dates, names of the potential plaintiffs and affected Directors or Officers, names of other parties involved, the nature and scope of the anticipated Claim, and all reasons why such a claim is reasonably to be anticipated.

Defendants argue that the Notice Letter gave Genesis sufficient notice of the Underlying Lawsuit under this clause and the claim should thus be deemed to have been first made during the policy period.  I agree.

Under Colorado law, an insurance policy is a contract "which should be interpreted consistently with the well settled principles of contractual interpretation." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990).  I must give words used in the policy their plain and ordinary meaning unless the intent of the parties, as expressed in the policy, indicates that an alternative interpretation is intended.  *Id.*  In addition, I must not rewrite clear and unambiguous contract provisions.  *Id.*  Courts should read the provisions of the policy as a whole, rather than reading them in isolation.  *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992).

An insurance policy is enforced as written unless the policy language contains an

ambiguity– that is, if the policy is susceptible on its face to more than one reasonable interpretation. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). Any ambiguity in an insurance policy is construed in favor of providing coverage to the insured. *Id.* Policy provisions requiring an insured to provide timely notification to the insurer of a claim or occurrence as a condition precedent to coverage are generally enforceable. *See Hansen v. Barmore*, 779 P.2d 1360, 1362 (Colo. App. 1989). However, such provisions should be liberally construed in favor of the insured. 13 Couch on Ins. § 186:27 (3d ed., Nov. 2006).

The notice provision is unambiguous and clearly requires that notice be given to Genesis of a potential claim with specificity. I conclude that, as a matter of law, the Notice Letter provides notice adequate to trigger coverage under this provision. This clause requires notice of the "facts and circumstances potentially giving rise to the claim." The Notice Letter identifies the relevant parties (Crowley and Cerberus), Crowley's alleged wrongful act[1] (failure to disclose financial relationships between him and Cerberus), the failure of the directors to discover the conflict of interest, the likely plaintiffs in a lawsuit (shareholders or creditors of the company) and the nature of claims to be asserted, and the reasons why such a claim is reasonably to be anticipated (because the undisclosed relationship may have affected the operation of Coram or the bankruptcy proceedings). Taken together with the further notice and pleadings forwarded to Genesis in connection with the Shareholder Litigation and the efforts by the Equity Committee to bring a

---

[1]The policy defines "Wrongful Act" as "any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty . . . ."

8

derivative suit (all within the policy and discovery period), I conclude that the Underlying Lawsuit should be deemed to fall within the policy period.

Genesis argues that the Notice Letter is insufficient because it does not identify the specific wrongful conduct at issue, referring only to "financial relationships." In addition, Genesis argues that the letter did not identify any insured by name, other than Crowley, or include relevant dates of the wrongful conduct. I disagree. First, the directors and officers were identified by position, if not by name, and the time period of the wrongful conduct was apparent. Moreover, Colorado law reflects the general disfavor of forfeiture and therefore appears to require substantial, not strict, compliance with a notice provision. *Hansen*, 779 P.2d at 1363.[2] This makes particular sense in connection with notification of a potential claim, where the exact identities of the parties and nature of claims will be determined by a yet unknown plaintiff. Here, Genesis had adequate notice of the kind of claims that could be asserted based on the alleged conflict of interest and failure to discover and disclose it in the operation of the company and in the reorganization proceedings.

This finding is further reinforced by the fact that the letter referred to and appended a transcript of the Bankruptcy Court's hearing on the First Plan, which contains more details about the nature of the employment relationship between Crowley and Cerberus. The narrative in the letter and express reference to the transcript distinguish this case from

---

[2]The case law cited by Genesis in opposition to this proposition, including *St. Paul Fire and Marine Ins. Co. v. Est. Of Hunt*, 811 P.2d 432 (Colo. App. 1991) is inapposite as it concerns whether a complete failure to provide notice can be excused or whether an insurer is required to show prejudice if no notice is provided.

those cited by Genesis.  *See, e.g., LaForge v. The American Casualty Co. Of Reading, Penn.,* 37 F.3d 580, 584 (10th Cir. 1994) (renewal application with no specific indication of what occurrence could give rise to suit did not constitute notice under claims-made policy); *Asche v. Hartford Ins. Co. Of Ill.,* 2006 WL 2792881 (D. Conn., Sept. 28, 2006) (letter enclosing FDIC dismissal order and stating only that directors and officers "may be subject to claims for wrongful acts" was insufficient as it did not identify specific wrongful acts, the basis for claims, damages, or the identity of potential claimants).

Moreover, I consider that the notice to Genesis of the Shareholder Litigation and, especially, the efforts by the Equity Committee in 2001 to file a derivative suit provides an additional basis for finding that the Underlying Lawsuit is deemed to fall within the policy period.  Coram, through its broker, notified Genesis of the threatened derivative action in a letter that referred back to the Notice Letter and enclosed the motions by the Equity Committee seeking permission to file the proposed derivative action, newspaper articles, and the proposed complaint.  These documents unambiguously foreshadowed an eventual lawsuit by some party on behalf of Coram as a result of Crowley's conflict of interest as described in the Notice Letter.  *See Sigma Fin. Corp. v. Am. Int'l Specialty Lines Ins. Co.,* 200 F. Supp. 2d 710, 722 (E.D. Mich. 2002) (series of letters, each more specific, containing attached exhibits and memoranda, were sufficiently specific to put a reasonable insurer on notice that events giving rise to a claim had occurred).  The litigation was delayed because of the bankruptcy proceedings and rulings of the Bankruptcy Court; however, the notice provision specifically states that "*any* claim subsequently made" based on circumstances described in a notice of potential claim is deemed as made during the

policy period.  (Emphasis added).  I agree with Trustee that Genesis should not be permitted to avoid coverage simply because the Bankruptcy Court determined that redress should be sought by Trustee following reorganization, rather than by a derivative action filed during the pendency of the bankruptcy proceedings.

Genesis received notice of the potential claim before the expiration of the policy and discovery period by virtue of the Notice Letter and documents relating to the subsequent actual and threatened litigation.  Therefore, Trustee's claim should  deemed to have been filed within the policy period pursuant to Section VII(B).

2.    Scope of coverage

A secondary issue is the scope of the claims deemed to be within the policy period and thus covered by the policy.  The policy by its terms limits coverage to claims based upon or arising out of "Wrongful Acts occurring or allegedly occurring before January 27, 2001."  *See* Section VII(J), Discovery Period Election Confirmation, as amended.  This would include the initial failure of Crowley to disclose his employment agreement with Cerberus and the failure of the directors to take action up to the time that the First Plan was rejected.  Genesis argues, however, that coverage does not extend to losses or defense costs incurred as a result of Crowley's continued receipt of compensation and the alleged failure of the Outside Directors to act or cure the conflict of interest in connection with developing the Second Plan and thereafter, because these are different wrongful acts occurring after January 27, 2001.  Trustee and Crowley argue alleged acts occurring after January 27, 2001 also can be covered if they are a part of a series of "similar, repeated

11

or continuous" wrongful acts.[3]   For the following reasons, I conclude that Crowley's

continued conflict of interest and the failure of the Outside Directors to investigate or cure

the problems after the policy period are all part of a single claim "based upon or arising out

of" wrongful acts occurring within the policy period and are therefore covered.

Crowley and the Outside Directors rely on the following section in support of their

argument.   Section V of the policy has the subheading "LIMIT OF LIABILITY,

RETENTIONS, ALLOCATION."  Paragraph C of this section provides:

> More than one Claim based upon or arising out of the same
> Wrongful Act(s), or facts, circumstances, or situations, or one
> or more series of similar, repeated or continuous Wrongful
> Acts, shall be considered a single Claim, and only one
> Retention shall be applicable to such single Claim.  Such
> single Claim shall be deemed to be first made on the date
> when the earliest Claim is first made, or on the date within the
> Policy Period in which notice of a potential Claim pursuant to
> Section VII.B. is given.

"Claim" is defined in the policy as, *inter alia*, "any civil, arbitration or administrative

proceeding" or "other written or verbal demand for money or services."  As discussed

above, the Underlying Lawsuit was a timely noticed claim.  Pursuant to this provision, the

Underlying Litigation, the Shareholder Litigation, and possibly the threatened derivative

action (which could be considered a "written or verbal demand for money") should be

considered a single claim.  The issue,  then, is what acts are covered in "such single

Claim."

The policy amendments confirm coverage for "Claims first made during the

---

[3]Crowley and Trustee also argue that this clause provides an alternative basis for
coverage as to the entirety of the Underlying Lawsuit.  Because I conclude that the Notice
Letter triggers coverage, I do not address this argument in detail.

Discovery Period which are <u>based upon or arise out of</u> Wrongful Acts occurring or allegedly occurring before January 27, 2001 and otherwise covered by the Policy." Section VII(J), Discovery Period Election Confirmation (Emphasis added). "Based on" and "arise out of" are broad phrases that, in this context, are not defined terms and need some interpretation as to the effect of continuing acts or omissions.  There is no dispute that Crowley's execution of his employment agreement, receipt of compensation, failure to disclose his interest in Cerberus, the failure of the Directors to investigate and discover the conflict of interest were alleged wrongful acts that occurred before January 27, 2001. However, these same acts and omissions, and their effect on the reorganization, continued beyond that date.  In light of the broad language of coverage provided in Section VII(J), I conclude that the entire course of conduct, including acts or omissions occurring after January 27, 2001, arises out of and is based on the wrongful acts occurring within the policy period and are thus covered.

This interpretation is consistent with and supported by the language in Section V(C), which clearly aggregates related claims and facts for the purposes of retention amounts and, presumably, limits of liability, as well as Section IV(D).  Section IV(D) excludes from coverage any claim based on wrongful acts occurring in a prior policy period or "any other Wrongful Act which has as a common nexus any fact, circumstance, situation, event or transaction with any fact, circumstance, or situation which has been the subject of notice."  Thus, the policy carefully excludes claims made in prior policy periods as well as any other related act with a common nexus to the subject of the original claim or notice.  This language shows an intent to connect related acts for the purposes of

13

exclusion and other limits; the same principle should apply for the purposes of coverage. *See also Highwoods Prop., Inc. v. Executive Risk Indem., Inc.,* 407 F.3d 917 (8th Cir. 2005); *Seneca Ins. Co. v. Kemper Ins. Co.,* 2004 WL 1145830 (S.D.N.Y. May 21, 2004). Therefore, I conclude coverage exists.

3.    Exclusions

In Claim IV of the Complaint filed by Genesis in this action, Genesis seeks a declaration that coverage does not extend to any amounts sought as recovery in the Underlying Lawsuit that are precluded by the policy.  Specifically, the definition of "Loss" in the policy excludes "criminal or civil fines or penalties imposed by law, multiplied portions of damages in excess of actual damages, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed."  In addition, the policy excludes coverage for any loss in connection with any claim arising out of "the Directors or Officers gaining in fact any profit or advantage to which they were not legally entitled." Section IV(A).  Crowley seeks summary judgment against Genesis on this claim, arguing that Genesis did not identify in discovery what portion of the Underlying Lawsuit would fall outside the definition of a Loss.  In its response brief, Genesis argues that Trustee seeks as relief disgorgement, which is not insurable by law, and that discovery is on-going.  The cases cited by Genesis, including *Reliance Group Holdings, Inc. v. Nat'l Union Fire Ins. Co.,* 188 A.D.2d 47, 594 N.Y.S.2d 20 (N.Y. App. 1993) and *Westfield Group v. Campisi*, 2006 WL 328415 (W.D. Pa. Feb. 10, 2006), generally stand for the proposition that insurable damages do not include restitution or disgorgement of property wrongfully acquired.  However, none of the parties has directed me to any

14

authority indicating that this is the law in Colorado and I have found none.  In addition, with

no facts before me concerning the basis for any not-yet-awarded portion of relief, I cannot

make any determination as to whether it would or would not be excluded under the terms

of the policy.  Accordingly, Crowley's motion for summary judgment on Claim IV of

Complaint should be denied.

Trustee apparently also seeks summary judgment on Count II of the Complaint,

which seeks a declaration that the "personal profit" exclusion should apply here.  Trustee

argues that this exclusion does not apply to the Outside Directors as there is no allegation

that they received any personal profit.  Genesis does not respond to this argument.

Accordingly, I agree with Trustee that to the extent Count II is directed at Trustee, the

"personal profit" exclusion does not apply.

4.    Settlement by Outside Directors

In a separate motion, Genesis seeks summary judgment on whether the settlement

of the Outside Directors with Trustee is a covered loss as defined by the policy.  The policy

defines "Loss," in relevant part, as "amounts which the Directors or Officers are legally

obligated to pay."  Trustees and the Outside Directors reached a settlement in the

Underlying Lawsuit in April 2006.  Pursuant to the agreement, the Outside Directors

consented to entry of judgment in the amount of $9.55 million and assigned their rights

under the policy to Trustee.  Trustee agreed that he would seek recovery on the judgment

only against the Outside Directors' insurers.  The settlement was approved by the

Bankruptcy Court.  Genesis argues that the settlement is not a Loss under the policy

because the Outside Directors have no legal obligation to pay and, therefore, Genesis is

15

not required to indemnify the Outside Directors.

As an initial matter, I will address Trustee's contention that the declaration sought by Genesis in this regard is outside of the scope of the pleadings. I disagree. The Outside Directors, in their Counterclaim, sought as relief a declaration that Genesis is required to indemnify them under the policy. Whether the policy's indemnity provisions apply to the settlement is an issue logically within the scope of this litigation. *See In re First Penn Corp.,* 793 F.2d 270, 272 (10th Cir. 1986) ("[e]quity, having once attached in a proper proceeding, will administer complete relief on all questions properly raised by the evidence, regardless of whether such question or issues are specifically raised by the pleadings.") (citation omitted). Accordingly, I will determine this issue on the merits.

The parties spend a good deal of their briefs discussing whether the agreement between the Outside Directors and Trustee is a so-called *Bashor* agreement, as recognized in *Northland Ins. Co. v. Bashor*, 494 P. 2d 1292 (Colo. 1972). In *Bashor*, the Colorado Supreme Court held that a contract whereby an insured, following entry of an excess judgment at trial, agrees to prosecute an action against its liability insurer and to assign to the injured party the proceeds, if any, recovered in the action in order to satisfy the judgment was not "champertous, illegal, void, or contrary to public policy." *Id.* at 1293-94.

The arguments by the parties appear to conflate several different issues, which I will address separately. One is whether a consent judgment, with a covenant not to execute except on the contractual indemnity, is a legal obligation to pay. The related, but closely connected issue, is whether such an arrangement would be void or unenforceable

under *Bashor* or under general principles requiring that settlements made between an insured and a third-party plaintiff without the consent of the insurer be reasonable.

First, I examine the basic argument asserted by Genesis– that the Outside Directors are not legally obligated to pay the settlement amount and that it is therefore not indemnifiable. Genesis points to *Serna v. Kingston Enter.*, 72 P.3d 376 (Colo. App. 2003) for this proposition. In *Serna*, the plaintiff had been involved in a car accident while working for the defendant, Kingston. The passengers in the other car sued Serna and Kingston (under a *respondeat superior* theory). The passengers settled with Kingston for $850,000. In the same action, Serna settled with the passengers with an agreement whereby she would consent to a $1.5 million judgment and then essentially bring an indemnity claim on passengers' behalf against Kingston. The passengers accepted $40,000 from Serna's insurance carrier, agreed not to execute on the remainder of the judgment, and promised to pay Serna half of any monies recovered from Kingston in excess of $ 1 million. In the appeal of Serna's common law indemnity lawsuit against her employer Kingston, a division of the Colorado Court of Appeals held that the indemnity claim failed because "there is no realistic prospect of the passengers executing on the judgment entered against her." *Serna,* 72 P.3d at 380. The division noted in dicta that "there has never been a judgment enforceable against Serna; indeed, the only judgment against her is one to which she stipulated, along with conditions virtually ensuring her that it would never be enforced against her." *Id.* at 381. Genesis argues that *Serna*, and cases following it, preclude coverage under the policy.

However, the division in *Serna* expressly noted that its decision was based on the

particular circumstances of that case, which included clear indicia of collusion and an unreasonable settlement, ethical questions regarding the role of the passengers' attorney in both actions, an effort to obtain two recoveries from Kingston by the passengers, and the possibility that Serna could actually profit from her own negligence.   For various reasons, including that *Serna* involved a common law indemnity claim, not the contract language at issue here, and because of the many factual distinctions, I do not consider *Serna* dispositive.

As a matter of pure contract interpretation, the matter should be decided in favor of Trustee.   The scope of the term, "legally obligated to pay" is not defined and is arguably ambiguous, and, as such would have to be construed in favor of the insured.   I agree with those courts that have considered similar language and concluded that where, as here, a covenant not to execute is not accompanied by a release of liability, amounts awarded under a consent judgment remain a legal obligation.   *See, e.g., Gainsco Ins. Co. v. Amoco Prod. Co.,* 53 P.3d 1051, 1061 (Wyo. 2002) ("the inclusion of a covenant not to execute in the settlement agreement between an insured and a claimant . . . does not act to negate the fact that a judgment has been entered against the insured and, therefore, does not bar the claimant, as assignee of the insured" from pursuing claims against the insurer) (collecting cases); *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995) (in the absence of a release, insured's tort liability remained; insurer still had defenses of fraud and collusion against consent judgment with covenant not to execute); *see also Vitkus v. Beatrice Co.*, 127 F.3d 936, 943 (10th Cir. 1997) (rejecting argument that settlement was not an amount insured was legally obligated to pay; "One could just as easily assert, after

18

all, that prior to entering into any settlement agreement, a defendant was not 'legally obligated' to pay any money," rendering policy's coverage for settlements a nullity). Accordingly, I disagree with Genesis and conclude that coverage for the consent judgment is not barred by the policy's definition of "Loss."

Genesis and Trustee invite me to find that the settlement is enforceable or not enforceable against Genesis based on various policy grounds that have not been decided by the Colorado state courts or are now on appeal to the Colorado Supreme Court. Specifically, Genesis contends that because the settlement at issue is not a *Bashor* agreement (since it was a pre-judgment settlement, not post-judgment), it is not enforceable against Genesis. However, I agree with Trustee that whether the arrangement is a *Bashor* agreement is not the dispositive issue; rather, the question is whether the arrangement is in some way void or invalid such that it should not be enforced against the non-participating insurer. A division of the Colorado Court of Appeals in *Ross v. Old Republic Ins. Co.,* 134 P.3d 505 (Colo. App. 2006) recently held that an insurer was not bound by a similar pre-judgment settlement agreement reached between the insured and third-party plaintiffs. The Colorado Supreme Court granted certiorari on whether this holding conflicts with *Bashor. Old Republic Ins. Co. v. Ross*, 2006 WL 2942523 (Colo. Oct. 16, 2006). Since a clearer pronouncement in this issue may be forthcoming, I decline to address whether the settlement would be unenforceable against Genesis on some basis other than the contract language.

Accordingly, it is ordered:

1.     The Motion for Summary Judgment Based on the Expiration of the Relevant Policy

Period and Discovery Period (doc no 151), Motion for Partial Summary Judgment (doc no 148), Motion for Partial Summary Judgment regarding Insurance Coverage of Outside Directors Under the Genesis Policy (doc no 153) are granted in part and denied in part as follows:

(a)     On Claim I of the Complaint, summary judgment is entered against Genesis and in favor of Crowley and Trustee.  Coverage for the Underlying Lawsuit is not barred because adequate notice of the claims was provided within the policy period.

(b)     On Claim II of the Complaint, summary judgment is entered against Genesis and in favor of Trustee.  The "profit or advantage" exclusion does not apply to the Outside Directors and, therefore, does not bar coverage for the Underlying Lawsuit for Trustee.

(c)     On Claim III of the Complaint, summary judgment is entered against Genesis and in favor of Crowley and Trustee.  Coverage for the Underlying Lawsuit includes acts or events occurring after January 27, 2001 which are based on or arising out of the wrongful acts covered by the timely notices.

(d)     On Claim IV of the Complaint, summary judgment is denied as premature.

2.     The Motion for Partial Summary Judgment as to Coverage for the Settlement in the Underlying Action (doc no 131) filed by Genesis is denied without prejudice. Coverage for the Outside Directors for the settlement between the Outside Directors and Trustee is not precluded by the policy's definition of "Loss."  The

20

parties may advise of developments in the law if the decision by the Colorado Supreme Court in *Old Republic Ins. Co. v. Ross* bears on the coverage question.

DATED at Denver, Colorado, on June 25, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge